UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO: 3:17-CV-509-JHM

VIVID IMPACT COMPANY, LLC            PLAINTIFF

V.

MICHAEL L. ELLIS,
CLARK AND RIGGS PRINTING, INC., and            DEFENDANTS
JOHN DOE

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Clarks and Riggs Printing, Inc.'s Motion to Dismiss [DN 8]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's Motion to Dismiss is **DENIED**.

### I. BACKGROUND

Plaintiff Vivid Impact Company, LLC ("Vivid Impact") brings this lawsuit against its former employee Michael Ellis, his new employer Clark and Riggs Printing, Inc. ("CRP"), and John Doe (who Plaintiff hopes to identify through discovery). According to the Complaint, Michael Ellis was an employee of Vivid Impact for 28 years. (Id. ¶ 13.) While he was there, he rose to the position of Vice President of Client Solutions. (Id. ¶ 14.) Because this position granted Ellis access to Vivid Impact's trade secrets and confidential information, he was asked to sign a Noncompetition and Nondisclosure Agreement in March 2009 (the "Contract"). (Id. ¶¶ 15−16.) Nonetheless, sometime before June 2017, Ellis made plans to leave Vivid Impact and join a competing company, CRP. (Id. ¶¶ 29−30.)

While he was still working at Vivid Impact, the Complaint alleges that Ellis met with one of his coworkers, Marc Finkbiner, to persuade Finkbiner to join him in leaving Vivid Impact for CRP. In doing so, Ellis misrepresented that Vivid Impact's owners were going to sell the

company within the next couple years. (Id. ¶ 33.) Finkbiner had worked as a creative/design professional at Vivid Impact for three years. (Id. ¶ 24.) As part of his job, he worked on the account for GPM Investments, LLC. (Id. ¶ 25.) Ellis also informed Finkbiner at this meeting that CRP was interested in Finkbiner helping to bring GPM Investments over to the new company. (Id. ¶ 35.) At the end of the meeting, Ellis provided Finkbiner with the contact information for the owners of CRP and instructions to call if he was interested in a job. (Id. ¶¶ 36−37.)

Finkbiner did follow up with the owners of CRP and met with them several days later. (Id. ¶¶ 37−38.) Like Ellis, the owners of CRP encouraged Finkbiner to leave Vivid Impact in order to join CRP and bring GPM Investments onboard as a client. (Id. ¶ 39.) As a result of this encouragement, Finkbiner resigned from Vivid Impact and began his new employment at CRP on July 17, 2017. (Id. ¶¶ 40−41.) Soon thereafter, Finkbiner became aware that Ellis had convinced some of Vivid Impact's clients to switch their accounts to CRP. (Id. ¶ 46.) Finkbiner grew concerned that CRP had hired him solely for the purpose of poaching clients from Vivid Impact. (Id. ¶ 47.) As a result, Finkbiner resigned from CRP after just a week and returned to work at Vivid Impact. (Id. ¶¶ 48−49.)

The Complaint also alleges that, while still employed at Vivid Impact, Ellis (potentially with the help of John Doe) used his log on credentials to access Vivid Impact's customer database. (Id. ¶ 50.) In doing so, Ellis allegedly took information including customer names, contact information, and special account terms. (Id. ¶ 52.) Plaintiff believes Ellis disclosed this information obtained from Vivid Impact's computer system to CRP. (Id. ¶ 57.) Moreover, Plaintiff alleges that Ellis deleted "swaths of sensitive and confidential business emails and documents belonging to Vivid Impact from a password-protected company computer." (Id. ¶ 63.)

Soon after, on July 21, 2017, Ellis resigned from his employment with Vivid Impact without telling the company of his new job at CRP. (Id. ¶ 58.) Vivid Impact reminded Ellis of his obligations under the Contract but Ellis refused to acknowledge that the Contract was binding. (Id. ¶¶ 60−61.) Counsel for CRP later informed Vivid Impact that CRP intended to hire Ellis and believed the Contract was unenforceable. (Id. ¶ 62.)

On August 18, 2017, Plaintiff Vivid Impacts brought this lawsuit against Ellis, CRP, and the unidentified individual who may have assisted Ellis in taking information from the computer system (John Doe). Defendant CRP now seeks to dismiss the claims against it, asserting that the Plaintiff has failed to bring a claim on which relief can be granted.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," id., and determine whether the "complaint . . . states a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 679. Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"

Id. at 663 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Id. (quotation omitted).

### III. DISCUSSION

Defendant CRP seeks to dismiss all of the claims brought against it. The Complaint includes three allegations against Defendant: Count VII alleges that Defendant aided and abetted a breach of fiduciary duty. Count IX alleges tortious interference with a contract. Finally, in Count X, Plaintiff alleges that Defendant was part of a civil conspiracy. The Court will address each allegation in turn.

#### A. Aiding and Abetting a Breach of Fiduciary Duty (Count VII)

Plaintiff first alleges that Defendant has aided and abetted a breach of fiduciary duty. The Kentucky Supreme Court has recognized that "a person who knowingly joins with or aids and

abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for any profits that may accrue." Steelvest, Inc. v. Scansteel Serv. Ctr. Inc., 807 S.W.2d 476, 485 (Ky. 1991). Kentucky follows the Restatements in defining a claim for aiding and abetting a breach of fiduciary duty. Miles Farm Supply, LLC v. Helena Chem. Co., 595 F.3d 663, 666 (6th Cir. 2010). To prevail, a plaintiff must prove the following elements: (1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party "substantial assistance or encouragement" in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty. Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., 514 S.W.3d 537, 546 (Ky. Ct. App. 2016).

The Complaint alleges that Defendant "willfully aided and abetted Ellis in breaching his fiduciary duties by knowingly encouraging, soliciting, and affirmatively assisting Ellis" in misappropriating Vivid Impact's confidential information, deleting business information, and inducing Finkbiner to leave Vivid Impacts for CRP. (Compl. ¶¶ 112−13.) In its Motion to Dismiss, the Defendant first maintains that a fiduciary relationship between Ellis and Vivid Impact never even existed. Classifying Ellis as a "mere salesperson," the Defendant argues that Ellis owed no fiduciary duty to Vivid Impact. (Mem. In Support of Def.'s Mot. to Dismiss [DN 8-1] at 8.) "Kentucky courts are willing to find a fiduciary relationship between an employer and employee when the employee has a position of trust, the freedom of decision, and access to confidential corporate information." Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC, No. 3:12-CV-429, 2015 WL 520960 (W.D. Ky. 2015) (quoting Aero Draper of Kentucky, Inc. v. Engdal, Ky., 507 S.W.2d 166, 168−69 (Ky. 1974)) (internal punctuation omitted). In this case, the Court is satisfied that Plaintiff has pleaded that a fiduciary duty existed. The Complaint alleges that Ellis held the position of Vice President of Client Solutions which gave him access to

"Vivid Impact's trade secrets, know-how, intellectual property, and other confidential information." (Compl. ¶ 15.) Regardless of whether Ellis' title within the company made him a corporate officer, the facts from the Complaint make it plausible that a fiduciary duty existed.

Next, Defendant claims that Ellis did not breach his fiduciary duty to Plaintiff, stating that a fiduciary duty "did not prevent him from talking with co-workers about employment opportunities outside of Vivid Impact." (Mem. in Support of Def.'s Mot. to Dismiss at 8.) According to Kentucky courts, "The scope of the fiduciary duty has been variously defined as one requiring utter good faith or honesty, loyalty or obedience, as well as candor, due care, and fair dealing." Lach v. Man O'War, LLC, 256 S.W.3d 563, 569 (Ky. 2008). Yet, the Defendant is correct that some types of competition are permissible under Kentucky law. For example, Kentucky courts have held that employees may "prepare to compete with his employer before leaving the company, *provided that the employee does not act unfairly or otherwise injure his principle before the departure*." Miles Farm Supply, 595 at 667 (emphasis added). The Sixth Circuit has likewise recognized that Kentucky law allows that "an employee-fiduciary may compete with his employer once the fiduciary relationship is terminated, *as long as 'prior fiduciary confidences' are not used to the company's detriment.*" DSG Corp. v. Anderson, 754 F.2d 678, 682 (6th Cir. 1985) (emphasis added).

Yet, the Complaint alleges that Ellis went well beyond any permissible competition. While still working at Vivid Impact, Ellis allegedly breached his fiduciary duty by "misappropriating Vivid Impact's confidential proprietary information; wrongfully transferring Vivid Impact's confidential proprietary information to its competitor, CRP; canvassing Vivid Impact's customers in an effort to divert business to CRP; deleting business information and documents from Vivid Impact's computers, and inducing Finkbiner to leave the employment of

Vivid impact to join CRP." (Compl. ¶ 108.) The Court is satisfied that Plaintiff has pleaded that Ellis breached his fiduciary duty.

Lastly, the Defendant disputes that it gave "substantial assistance or encouragement" to Ellis in effectuating the breach. (Mem. in Support of Mot. to Dismiss at 8.) The Restatements define "substantial assistance" to mean "defendant's conduct was a substantial factor in causing the tort." Insight Ky. Partners, 514 S.W.3d at 546 (citing Restatement (Second) of Torts § 876). The Restatements also provide a list of factors "to consider when determining whether substantial assistance has been provided: the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind." Id. (internal quotations omitted). The Plaintiff has alleged that Defendant was aware of Ellis' attempts to poach clients from Vivid Impact. (Compl. ¶¶ 45−46.) The allegations of the Complaint allow the Court to draw a reasonable inference that assistance or encouragement was given. This inference is based on the fact that Ellis and Defendant seemed to be working together at the time of the alleged breach and Defendants stood in a position to benefit from Ellis' wrongdoing. Plaintiff's claim for aiding and abetting a breach of fiduciary duty is plausible and Defendant's motion to dismiss Count VII is denied.

### B. Tortious Interference with a Contract (Count IX)

Next, in Count IX, Plaintiff alleges that Defendant tortuously interfered with the Contract between Ellis and Vivid Impact. To survive a motion to dismiss, a claim for tortious interference with a contract must assert six elements: "(1) the existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intent to cause a breach of that contract; (4) that defendant's action in fact caused a breach of the contract; (5) that plaintiff suffered damages as a result of the breach; and (6) that defendant enjoyed no privilege or justification for its conduct."

Seegers Enterprises, Inc. v. Town & Country Bank & Trust Co., 518 S.W.3d 791, 795 (Ky. Ct. App. 2017); Ventas, Inc. v. Health Care Prop. Investors, Inc., 634 F. Supp. 26 612, 618−19 (W.D. Ky. 2009).

Defendant argues that there can be no claim for tortious interference because it believed the Contract was unenforceable, thus it could not be breached. (Mot. to Dismiss [DN 8-1] at 9). The Complaint concedes that one of Defendant's attorneys "informed Vivid Impact that CRP intended to hire Ellis" and explained that CRP was doing so under the contention that the Contract was unenforceable. (Compl. ¶ 62.) However, the Plaintiff correctly responds by pointing out that belief that a contract is unenforceable does not justify a party to cause a breach. Kentucky courts use the Restatement (Second) of Torts for guidance on claims on intentional interference with a contract. National Collegiate Atheletic Ass'n v. Hornung, 754 S.W.2d 855, 857 (Ky. 1988). The Restatements make clear that one is subject to liability for interference with a contract provided that he is aware of the facts giving rise to a contractual duty and "even though he is mistaken as to their legal significance and believes that the agreement is not legally binding." Restatement 2d of Torts § 766, comment i.

The Court finds that Plaintiff has set forth a plausible claim. Ellis was bound by the Contract with Vivid Impact and Defendant was aware of this. (Id. ¶¶ 16 & 62.) The Complaint asserts that Defendant "intended to and did cause Ellis to disclose Vivid Impact's confidential and proprietary business and costumer information in breach of the Agreement." (Id. ¶ 123.)[1] Lastly, regardless of whether Defendant believed the Contract to be unenforceable, Plaintiff has

---

[1] The Complaint also alleges that Defendant tortiously interfered with the Contract when it hired Ellis and caused Ellis "to induce Finkbiner to leave the employment of Vivid Impact in breach of the Agreement." (Compl. ¶¶ 123−24.) The Defendant contends that there could be no breach of contract for hiring Ellis as Plaintiff's restrictive covenant contained in the Contract was unenforceable. (Mot. to Dismiss at 8.) Further, Defendant argues that any alleged inducement of Finkbiner was not actually a breach of the Contract. (Id. at 10.). However, for the purposes of this Motion to Dismiss, the Court is satisfied that because Plaintiff has plead a plausible breach of the Contract in ¶ 122 (stating that Ellis disclosed confidential business information), the issues of what other actions constituted a breach of the Contract need not be decided at this time.

pleaded that such conduct was not justified and Defendant has not proven otherwise. (Id. ¶ 126.) The Court is satisfied that this claim is sufficiently plead and therefore, Defendant's motion to dismiss Count IX is denied.

### C. Civil Conspiracy (Count X)

Lastly, Count X of the Complaint alleges that all of the Defendants engaged in civil conspiracy. Under Kentucky law, a claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting Smith v. Bd. of Educ. of Ludlow, 264 Ky. 150, 94 S.W.2d 321, 325 (Ky. 1936)) (internal quotation marks omitted). The elements of a civil conspiracy are: (1) an agreement or combination, (2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal. Ellington v. Fed. Home Loan Mortg. Corp., 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014). Further, "the law in Kentucky requires the actual commission of the tortious act or a concert of action where substantial assistance has been provided in order for liability to attach based on a civil conspiracy theory." James v. Wilson, 95 S.W.3d 875, 897-98 (Ky. Ct. App. 2002). In Kentucky, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., No. 2008-CA-002389-MR, 2010 Ky. App. Unpub. LEXIS 555, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010).

In the Complaint, Plaintiff alleges that all of the Defendants conspired to "misappropriate Vivid Impact's employees, customer relationships, and confidential information." (Compl. ¶ 129.) Although the underlying tort is not made clear in this section of the Complaint, the

allegations in Plaintiff's civil conspiracy claim closely mirror the claim for conversion found in Count VIII. (Id. ¶ 116) ("Ellis's and Doe's actions in misappropriating Vivid Impact's confidential proprietary information have unlawfully deprived Vivid Impact of its property without consent or lawful justification."). Making the reasonable conclusion that conversion is the underlying tort for Plaintiff's claim of civil conspiracy, the court finds this claim plausible and therefore, Defendant's motion to dismiss Count X is denied.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **DENIED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

November 16, 2017

cc: counsel of record